## McKINLAY v. GADDY.

1. An administrator filed his bill in equity against the heirs at law for sale of land in aid of assets, praying that creditors be called in and enjoined; but no creditor was a party to the bill or called in, and no injunction was granted. The land was sold and the fund realized. More than twenty years after the filing of this bill, the fund being still in court, creditors were called in and they appeared and proved their claims. *Held*, that these claims were all barred by the statute of limitations and the lapse of time.

2. In the record was found an undated list of "claims proved" in the

handwriting of the deceased attorney of record for the administrator, but it was not shown when this paper was written. *Held*, that the *onus* was on the creditors to show an admission of their claims before they were barred, and, besides, this paper was not an admission. Would an admission by the attorney of the administrator be sufficient?

3. Where creditors present their claims before the master under the call of the court, the heirs may plead the statute of limitations and the presumption of payment as a bar to the claims so presented.
Mr. Justice McGowan dissenting.

Before Cothran, J., Marion, September, 1886.

The opinion fully states the case.

*Messrs. Sellers & Sellers* and *W. J. Montgomery*, for appellants.

*Messrs. J. G. Blue* and *C. D. Evans*, contra.

April 26, 1887. The opinion of the court was delivered by

Mr. Justice McIver. The sole question presented by this appeal is whether certain claims presented against the estate of the intestate, under an order calling in creditors, are barred by the statute of limitations and the presumption of payment arising from lapse of time. All of the claims, except one, are notes under seal, and there is no question as to the fact that the requisite time had long since run out before they were presented for proof under the above mentioned order. The only inquiry, therefore, is whether anything has occurred which would serve to arrest the operation of the statute or the currency of the time from which payment would be presumed. To determine this question, a brief statement of the facts will be necessary.

It appears that Levi Gaddy died intestate some time in the year 1862, and that the plaintiff having administered on his estate some time in that year, filed a bill in equity "for sale of land, account, and partition," wherein, amongst other things, it was alleged, "that after the sale of the personal estate of the intestate, and the payment of a portion of his debts, there remained other debts unpaid, and that to meet the same it was necessary to sell the real estate." No further proceedings seem

to have been taken under this bill until October 17, 1866, when an amended bill was filed, "embracing the same purposes as the original bill, and to marshal assets." This amended bill also "prays for an injunction against suing creditors, some of whom it was alleged were threatening." It does not appear, however, that any injunction was ordered, or any order calling in the creditors, until as hereinafter stated. Under this amended bill the real estate of the intestate was sold in November, 1869, and the proceeds of such sale, or rather the balance thereof, is now in the hands of the master, and constitutes the subject matter of contention in this case.

After the sale of the land no further proceedings seem to have been taken in the case, which was continued from term to term until November, 1874, when it was "stricken" from the docket; and so it remained until June 7, 1886, when, on motion of the solicitor for the administrator, and with the consent of the heirs, it was restored to the docket, and an order was passed referring it to a special master to inquire and report to whom the fund should be paid—to the creditors or to the heirs at law of the intestate. The special master made his report recommending that the fund be paid to the heirs, upon the ground that the claims presented were barred by the statute of limitations and the lapse of time. Upon hearing this report Judge Pressley, without passing upon the merits, recommitted the report to the special master for the purpose of affording creditors an opportunity to prove their claims, it being represented to him that there might be creditors who have not had an opportunity to do so. Under this order the special master made another report, in which he adhered to this conclusion, that the claims were all barred.

To this report exceptions were filed by the creditors, and Judge Cothran, who heard the case on Circuit, rendered his decree sustaining the exceptions, and directing that the fund in question, after payment of costs, be paid out *pro rata* to the creditors. In his decree the judge says: "It does appear from the papers in the case that several of the creditors presented their claims against the estate to the administrator in the usual way by leaving with him copies of the same verified or sworn to before a notary public, and these are found among the papers in the

record.  Mr. McDuffie was the attorney for the administrator,
and in his handwriting, and with the record is found a paper in
the following terms : "D. C. McKinlay *v.* J. I. Gaddy *et al.*
Claims proven." Then follows a list of the claims, with the
amounts stated, but no dates, with a statement that all of them,
except one, are sealed notes.  It does not appear, however, *when*
these claims were presented to the administrator, or *when* Mr.
McDuffie made the list of claims above referred to and deposited
the same in the record.

The heirs at law appeal from Judge Cothran's decree upon the
several grounds set out in the record, which substantially raise
the question whether the claims were barred by the statute or
the presumption of payment by lapse of time.

It seems to be conceded that, upon their face, all of these
claims are so barred ; for although it does not appear what was
the date or time of maturity of any of these claims, yet, as it
does appear that the intestate died in 1862, they all must have
arisen prior to that time, and therefore, as we have said, the only
question is whether anything has occurred to take the one claim,
to which the statute of limitations is applicable, out of the opera-
tion of that statute, or to remove the presumption of payment
arising from lapse of time as to those to which the statute does
not apply.  Although these claims belong to different classes—
one being a simple contract and the others being specialties—to
which the statute *eo nomine* would not apply, as they all arose
prior to the adoption of the code, yet they may be considered
together, for the only practical difference is that in the simple
contract claim the five years, during which the statute of limita-
tions was suspended by one of the sections of the act, commonly
called the stay law, would have to be deducted ( *Wardlaw* v. *Buz-
zard,* 15 *Rich.,* 158), while in the specialty claims no such deduc-
tion would be allowed (*Shubrick* v. *Adams,* 20 *S. C.,* 49); yet, in-
asmuch as even allowing the deduction of the five years on the sim-
ple contract claim, the statutory period would have run out before
the claim was presented, or before any order of injunction or
order to call in creditors had. been passed, all the claims may,
practically, be regarded as standing on the same footing.  For,
as held in *Boyce* v. *Lake,* 17 *S. C.,* 481, and repeated in *Shu-*

*brick* v. *Adams, supra,* the presumption of payment arising from the lapse of twenty years can only be rebutted by such facts as would take a note not under seal out of the operation of the statute. And these cases furthermore hold that the *onus* is on the creditor to establish such facts as would, in the one case, rebut the presumption of payment, and in the other take the case out of the operation of the statute.

Now, in the light of these principles, let us proceed to examine the case. It seems that very soon after the death of the intestate a bill was filed by the administrator, to which, however, no creditor seems to have been made a party, amongst other things, for the sale of the land to pay debts, but no step whatever seems to have been taken therein. After the filing of the bill, and more than four years afterwards, this bill was amended so as to make it a proceeding to enjoin creditors and to marshal assets, but still, so far as the record presented here shows, no creditor was made a party, and no order of injunction, or order calling in creditors, was passed, and nothing whatever done under the amended bill, except to obtain an order for the sale of the land, which seems to have been sold in November, 1869. Again there is a pause in the proceedings until November, 1874, when the case was stricken from the docket and remained in that condition for nearly twelve years. There certainly was nothing in any of these proceedings that would even tend to rebut the presumption arising from lapse of time. The creditors never were made parties, and therefore could not be concerned in, or be in anywise bound by, anything that occurred therein. There was nothing whatever to prevent them from enforcing their claims by suit against the administrator. There was no order enjoining them from doing so, and no case pending in which such an order could properly have been obtained; for surely the creditors, or some of them, as representatives of their class, were necessary parties to any proceeding by which it might be sought to restrain them from pursuing their rights in the ordinary form.

Great stress is, however, laid upon the fact that the creditors presented their claims to the administrator, and that Mr. McDuffie made a list of them, marked "Claims proven," and deposited the same in the record; but *when* this was done, whether

before or after the twenty years had run out, does not appear, and the *onus* was upon the creditors to make it appear. There does not seem to be any warrant for the assumption that it was probably in November, 1869, when the land was sold ; and, in fact, there is nothing whatever in the "Case," as presented for argument here, which indicates when this was done. But even assuming that it was done at the time suggested, it is difficult to perceive what bearing it can have upon the question under consideration. The presentation of these claims was nothing more than the act *of the creditors*, and not the act of the debtor. The inquiry is, whether the debtor, or any one authorized to represent him, has made such an unqualified acknowledgment of a subsisting liability as from it a promise to pay may be inferred, or as would be sufficient to rebut the presumption of payment. There certainly was no express acknowledgment, and it seems to be equally certain that no acknowledgment of the debts can be inferred from the mere reception of the attested claims, making a list of them and depositing the same in the record. The law requires that all persons having claims against a decedent shall render to the administrator "an account of their demands, duly attested," within a prescribed time, and surely the fact that an administrator receives such statement and files it away constitutes no evidence whatever of an admission of the justness of such claim.

But it is urged that the fact that Mr. McDuffie, as attorney of the administrator, labelled this list as "Claims proven," and placed it in the record, must be regarded as an acknowledgment of these claims. Now, even granting, for the purposes of this case only, that the attorney of an administrator would have authority to acknowledge proof of a claim which would be binding upon the estate of the intestate, yet it is very clear that the act of Mr. McDuffie did not have the effect of such acknowledgment, and could not have been so intended by him at the time. The label— "Claims proven"—could not have been intended to indicate that the claims embraced in the list had been duly established or proved as valid debts of the intestate, for there was no person authorized, at that time, to take such proof, and, of course, this was well known to Mr. McDuffie. He could not, therefore, have

used those words to indicate that those claims had been established as valid debts of the intestate, but simply to indicate that this was a list of claims which had been handed in, "duly attested" by being verified or sworn to before a notary public, as is the usual custom in presenting claims against an estate, which are oftentimes in common parlance, spoken of as claims proven or proved, though, in fact, they are nothing more than claims which have been duly attested for presentation to the administrator, as notice of the claim, by having the affidavit of the creditor appended that the same is justly due, and no part thereof paid.

Again, it is urged that the pleas of the statute and the presumption of payment were not interposed by the administrator, who was the proper party to do so ; and the case of *Bolt* v. *Dawkins* (16 *S. C.*, 198) is cited in confirmation of this view. But it will be observed that the authorities cited in that case, especially 2 *Williams on Executors*, 1283, show that while the administrator is the proper party to interpose such a plea, and while it may be his duty to do so, yet if he neglects or declines to plead such a plea, any other party to the action interested in the fund to be affected, may interpose the plea. See, also, 1 *Story Eq. Jur.*, section 548, where, in speaking of proceedings under a creditor's bill, it is said : "In all cases of this sort each creditor is entitled to appear before the master, and may there, if he chooses, contest the claim of any other creditor in the same manner as if it were an adversary suit." Of course, the same doctrine would apply to the heirs who were parties to the action, interested in the fund to be affected. See, also, *Wilson* v. *Kelly*, 19 *S. C.*, 160.

It may be a hard case with these creditors, who, as the Circuit Judge seems to think, have been "lulled into repose" by the action, or rather the non-action, of the administrator, to lose their debts ; but certainly no fault can be imputed to the court. Indeed, while it may be true that the administrator has been in fault in not properly prosecuting his action for the settlement of the estate of his intestate, it may none the less be true that the creditors have themselves slept over their rights, and must bear the consequences of their own *laches*. They knew, or had a very easy means of ascertaining, that they were not parties to

the action instituted by the administrator, and therefore they knew, or ought to have known, that they were in no way concerned with what was done, or omitted to be done, in that action. They were under no restraint in the prosecution of their rights. The doors of the court were at all times open to them, and if they neglected to avail themselves of the remedies which were accessible to them, and chose to rely upon the administrator doing for them what they could have done for themselves, they cannot now impute to the courts of the country any want of "efficiency" or "sufficiency" in restoring them to rights which they have lost by their own *laches*, even though such *laches* may have been caused by a misplaced confidence in another, upon whom they have chosen to rely, rather than upon the remedies afforded by the law.

It follows, therefore, that there is nothing to rebut the presumption of payment arising from lapse of time, and that the Circuit Judge erred in holding otherwise.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the case be remanded to that court with instructions to render judgment confirming the report of the special master.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McGOWAN. I dissent. The estate was carried into the Court of Equity by the administrator, McKinlay. The creditors did not sue him at law, for it would have been idle to do so; but instead presented their demands to the administrator, and he (by his attorney) marked them "proven" and placed them in the record. It seems to me that was an admission by the party liable to pay, that the claims were subsisting debts against the intestate, and had not been paid either in fact or in law. We know that these debts were not afterwards paid in fact, and I think the circumstances were sufficient to rebut the presumption of payment from lapse of time.

Judgment reversed.